UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Eliyahu MIRLIS <br> *Plaintiff*, | ) <br> ) <br> ) | 3:16-CV-00678 (KAD) |
| v. | ) <br> ) | |
| Daniel GREER and YESHIVA OF NEW HAVEN, INC., <br> *Defendants*. | ) <br> ) <br> ) | MARCH 30, 2022 |

## MEMORANDUM OF DECISION
### RE: DEFENDANTS' MOTION FOR RELIEF FROM FINAL JUDGMENT, ECF No. 399

Kari A. Dooley, United States District Judge:

On May 3, 2016, Plaintiff Eliyahu Mirlis ("Mirlis" or "Plaintiff") commenced this action against, *inter alia,* Defendants Daniel Greer ("Greer") and Yeshiva of New Haven, Inc. ("Yeshiva") in which he alleged that Greer had subjected him to sexual abuse while he was a student at Yeshiva. The case was tried to a jury before Judge Shea, and the jury found both Defendants liable. Judgment entered against the Defendants on June 6, 2017 in the amount of $21,749,041.10. Since then, efforts to collect the judgment have resulted in ongoing litigation in this and other matters.[1]

Pending before the Court is the Defendants' motion for relief from judgment pursuant to Fed. R. Civ. P. 60, ECF No. 399. Therein, the Defendants allege that information recently received suggests that there may have been a cooperation agreement, or other *quid pro quo*, between the Plaintiff and a key witness in the case, Aviad Hack. They ask the Court to convene an evidentiary

---

[1] In addition to his efforts in this case, Plaintiff has brought two separate actions to collect this judgment. The first is against Edgewood Elm Housing, Inc., F.O.H. Inc., Edgewood Village, Inc., Edgewood Corners, Inc., and Yedidei Hagan, Inc. and alleges that these entities are alter ego entities to Greer and are therefore liable for the judgment against Greer and Yeshiva. *See Mirlis v. Edgewood Elm Housing Inc. et al.*, No. 3:19-cv-00700 (CSH) (D. Conn.). The second is against Sarah Greer and alleges that funds have been fraudulently transferred to her. *See Mirlis v. Greer*, No. 3:18-cv-02082 (KAD) (D. Conn.). A default judgment entered against the Defendant in this latter case, although the judgment has recently been re-opened and is the subject of ongoing litigation.

hearing to determine whether there was such an agreement or other equitable grounds to vacate the judgment. For the reasons set forth below, the motion is DENIED.

**Background[2]**

The case, in summary, arises out of Plaintiff's allegations that he suffered sexual abuse at the hands of Greer while Plaintiff was a student at Yeshiva, which operated an orthodox Jewish elementary and high school for boys in New Haven, Connecticut. The abuse was alleged to have taken place between 2001 and 2005. Plaintiff initially brought the suit on May 3, 2016 against Greer, Yeshiva, Gan School, Inc., F.O.H., Inc., Edgewood Village, Inc., and Edgewood Elm Village, Inc. Before trial, Plaintiff amended his complaint eliminating all claims except those brought against Greer and Yeshiva, against whom he alleged Negligence (as to Yeshiva); Recklessness (as to Greer and Yeshiva); Negligent Infliction of Emotional Distress (as to Yeshiva); Intentional Infliction of Emotional Distress (as to Greer and Yeshiva); and Sexual Assault and Battery (as to Greer). Greer and Yeshiva denied all claims and the case proceeded to trial in May 2017. The jury returned a verdict in Plaintiff's favor. Judgment entered on June 6, 2017 in the amount of $21,749,041.10, of which $15,000,000 was compensatory damages (awarded by the jury), $5,000,000 was common law punitive damages (awarded and determined by the Court), and $1,749,041.10 was offer-compromise interest as of the date of judgment (awarded and determined by the Court).

Prior to trial, Aviad Hack ("Hack") was identified as a witness. Hack had attended Yeshiva as a student himself, but during Plaintiff's years at Yeshiva, Hack was involved in the administration of the school. His video-recorded deposition was, but for a few questions subject

---

[2] The parties' familiarity with the detailed procedural history and intricacies of the trial in this case is presumed. On September 15, 2020, the case was re-assigned from Judge Shea to Judge Covello. On July 15, 2021, the case was re-assigned to the undersigned.

to a motion to compel, taken on July 25, 2016 and August 2, 2016 in anticipation of him later testifying at trial. However, at the time of trial, Hack's appearance could not be secured. Plaintiff's process server attempted to serve Hack with a subpoena to testify on multiple occasions in at least two states, once waiting two hours for Hack. Plaintiff's counsel also attempted to contact counsel for Hack, but all of these efforts to serve Hack with a subpoena failed. Defendants attempted to subpoena Hack for trial as well. Indeed, both parties—coincidently using the same process server—attempted and failed to serve Hack on May 3, 2017, when he briefly returned to Connecticut to complete his deposition. In light of these developments, Judge Shea determined that Hack was unavailable to testify on May 10, 2017 and allowed portions of his recorded deposition to be shared with the jury.

Hack's testimony was an important part of the Plaintiff's case. In his testimony, Hack admitted to having a sexual relationship with Greer, and he further admitted that this relationship started when Hack was still a student at Yeshiva, in either 1991 or 1992. Hack's sexual relationship with Greer lasted until 2004. Hack also admitted that around that time—in 2003, possibly as early as May of that year—Hack became aware of a sexual relationship between Greer and the Plaintiff, and he detailed the basis for his knowledge. The jurors asked to rehear portions of Hack's deposition during their deliberations, and, as Judge Shea later noted in one of his rulings in the case, "the jurors likely relied upon Hack's deposition testimony in rendering their verdict." *Mirlis v. Greer*, No. 3:16-cv-00678 (MPS), 2018 WL 580469, at *5 (D. Conn. Jan. 26, 2018) *reversed* 952 F.3d 51 (2d Cir. 2020).[3]

Prior to trial, both Plaintiff and Defendants recognized that Hack's testimony was important because it provided corroboration of Plaintiff's allegations, and a dispute arose regarding

---

[3] For purposes of this decision, the Court accepts that Hack was a critical witness for the Plaintiff. Indeed, the Plaintiff does not assert otherwise.

the scope of the Defendants' potential cross-examination of Hack. The Defendants proposed to offer a filed but never-returned state court complaint which named Hack as a defendant with respect to Plaintiff's sexual abuse allegations. Defendants argued that because Hack was never named as a defendant in the federal lawsuit, the never-returned state court complaint would support an inference of bias or motivation to lie on Hack's part in order to protect himself from being sued or coming under greater legal scrutiny. The Defendants also argued that the fact that Hack was not a defendant raised the specter of a *quid pro quo* with Plaintiff whereby Hack would not be sued in exchange for favorable testimony.[4]

The impetus of the Defendant's current motion stems from more recent developments. At a private, religious arbitration session in January 2021, Hack submitted to that tribunal an affidavit from his counsel in this matter, Attorney Steven J. Errante ("Errante"). The affidavit addressed Hack's role as a witness in this case and Errante's efforts to prevent Hack from being sued. Therein, Errante avers that "[a] significant part of my representation of Aviad Hack was to prevent Aviad Hack from being sued by Mirlis" and that "I was able to accomplish the above by assuring Attorney Ponvert that Aviad Hack would testify truthfully and completely about everything that he knew regarding Mirlis and Daniel Greer and their relationship." The affidavit attached a copy of a state court complaint dated September 30, 2015 and which named Aviad Hack as a defendant.

Defendants learned of this affidavit through Rabbi Avrohom Notis ("Notis"), who is currently serving as a member of the panel in the aforementioned religious arbitration. The Defendants also submitted an affidavit from Notis. Notis avers that, in addition to submitting the affidavit, Errante answered questions before the tribunal on May 30, 2021. While there was no stenographic record made of that proceeding, Notis stated that Errante spoke of "the agreement

---

[4] Additional historical details will be set forth as necessary.

referenced in his affidavit" and that Errante indicated that Hack was "let off the hook" as a result of the discussions between Errante and Plaintiff's counsel. Further, Notis related that Errante stated that Errante never discussed with Plaintiff's counsel the subject of Aviad Hack not appearing at trial.

**Discussion**

The Defendants bring this motion pursuant to Fed. R. Civ. P. 60(b)(6), asserting that the information described above gives rise to an inference that there was an undisclosed cooperation agreement between Hack and Mirlis and that the agreement might have included an understanding that Hack would not have to appear at trial. The Defendants specifically posit that Hack provided his deposition testimony in exchange for not being sued by Mirlis, and that this information would have significantly undermined Hack's credibility with the jury. Consequently, the Defendants argue, the Court should be sufficiently troubled by that possibility and convene an evidentiary hearing to explore whether equitable grounds to vacate the judgment exist.[5] And given the importance of Hack's testimony, if a *quid pro quo* is revealed, the Defendants seek relief from the judgment.

Plaintiff responds that Defendants have improperly labeled their motion as one brought pursuant to Rule 60(b)(6), the catch-all provision by which relief from judgment may be sought, and asserts that the motion is, in reality, a motion pursuant to Fed. R. Civ. P. 60(b)(2), which allows for relief from judgment where there is newly discovered evidence. As a result, Plaintiff first argues that the motion is time barred. Alternatively, Plaintiff argues even if this Court were to consider the motion under the standards applicable to Rule 60(b)(6), the motion is still not timely

---

[5] The Defendants have cited no authority for the extraordinary request that the Court convene an evidentiary hearing and essentially allow discovery through compelled testimony into the question of whether there are grounds to seek relief from judgment.

5

and, even if timely, is substantively without merit. In reply, the Defendants do not meet the Plaintiff's first argument head on and instead reiterate that the circumstances presented permit consideration under Rule 60(b)(6). It is, however, Plaintiff's argument concerning Rule 60(b)(2) that carries the day.

Rule 60(b) reads in pertinent parts:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . .
>
> > (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) . . .
>
> (6) any other reason that justifies relief.

Both Rule 60(b)(2) and (b)(6) are time limited. A motion pursuant to Rule 60(b)(2) must be made within a reasonable time but no more than a year after entry of the judgment while a motion pursuant to Rule 60(b)(6) must be made within a reasonable time. *See* Fed. R. Civ. P. 60(c)(1); *Wyche v. Advanced Drainage Systems, Inc.*, 332 F.R.D. 109, 116 (S.D.N.Y. 2019).

"A party seeking relief under Rule 60(b)(2) must demonstrate that (1) newly discovered evidence is of facts existing at the time of the prior decision; (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them; (3) the newly discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) the newly discovered evidence is not merely cumulative of evidence already offered." *Tufts v. Corporation of Lloyd's*, 981 F. Supp. 808, 812 (S.D.N.Y. 1996) (omissions, alterations, and quotations omitted).

Relief under Rule 60(b)(6) is less well-defined. The Second Circuit has described the rule as "a 'grand reservoir of equitable power to do justice in a particular case'" even while

acknowledging "that [the] reservoir is not bottomless." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quoting *Matarese v. LaFevre*, 801 F.2d 98, 106 (2d Cir. 1986)). *See also Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) ("[W]hether the water in the reservoir is scant or grand, is far from clear."). What is clear is that "[c]ontrolling cases have held that if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)." *United States v. International Broth. of Teamsters*, 247 F.3d 370, 391–92 (2d Cir. 2001) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988); *Nemaizer*, 793 F.2d at 63).[6] *See also Stevens*, 676 F.3d at 67 ("Of particular concern is that parties may attempt to use Rule 60(b)(6) to circumvent the one-year time limitation in other subsections of Rule 60(b)."). Rule 60(b)(6) is "properly invoked only when there are extraordinary circumstances justifying relief . . . when the judgment may work an extreme or undue hardship . . . and when the asserted grounds for relief are not recognized in clauses (1)–(5) of the Rule." *Nemaizer*, 793 F.2d at 63 (citations omitted).

The Court agrees with the Plaintiff that the Defendants' motion is predicated on purportedly newly discovered evidence, and it is therefore properly evaluated under Rule 60(b)(2). The Defendants seek relief in light of information recently received following religious arbitral

---

[6] At oral argument, the Defendants opined that *Liljeberg* did not prevent this Court from considering their motion pursuant to Rule 60(b)(6). In *Liljeberg v. Health Services Acquisition Corporation*, a Rule 60(b)(6) movant had lost a bench trial as well as its subsequent appeal when, ten months after the appeal had been decided, the movant discovered that the judge who had presided over the bench trial had a conflict of interest that may have required his recusal pursuant 28 U.S.C. § 445(a). *See* 486 U.S. 847, 850 (1988). The Supreme Court held that granting relief pursuant to Rule 60(b)(6) under those circumstances was proper. *Id.* at 863–70. In so holding, the Court declared that "Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time **and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)**." *Id.* at 863 (emphasis added). The Court acknowledged that in so stating it was expanding on its earlier decision in *Klapprott v. United States*, which held that a party may not avail himself of the broad "any other reason" clause of Rule 60(b)(6) if his motion is based on grounds specified in clause (1)—"mistake, inadvertence, surprise or excusable neglect." *Id.* at 863 n.11 (citing *Klapprott v. United States*, 335 U.S. 601, 613 (1949); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2864 (1973)). Whether the Court's statement in *Liljeberg* could be considered dicta or an otherwise less categorical directive than is urged by Plaintiff, the Second Circuit, as discussed in *International Brotherhood of Teamsters*, has unequivocally determined that clauses (1) through (5) are exclusive of claims under clause (6). *See* 247 F.3d at 391–92.

7

proceedings, specifically the Notis and Errante affidavits and which arguably support an inference that Hack's testimony may have been biased or born of a motivation to lie as a result of an undisclosed *quid pro quo* or cooperation agreement. While not identified by the Defendants as "new evidence," the reality of what is being offered to support the Defendants' motion cannot be ignored. The Defendants offer previously unknown impeachment evidence that Mirlis and Hack may have reached an agreement in exchange for which Hack would not be sued but would testify for Mirlis.[7] Accordingly, the Court considers the motion as one brought pursuant to Rule 60(b)(2), and, having been filed more than one year after judgment has entered, the motion is time barred under the provisions of Rule 60(c).

Nevertheless, even if the Court were to consider this motion pursuant to Rule 60(b)(6), the motion would not be timely because the Defendants have offered no persuasive reason for their delay in bringing this motion. *See Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (nothing that what is a reasonable time pursuant to Rule 60(c) is determined based on the particular circumstances of the case, taking into account the reason for the delay, the possible prejudice to the non-moving party, and the interest of finality). The record, in fact, establishes that the Defendants failed to investigate the possibility of a cooperation agreement or *quid pro quo* when they had the opportunity to do so or to bring an earlier motion. The parties do not dispute that the specter of some undisclosed benefit or *quid pro quo* between Hack and Plaintiff was present before the trial commenced, as was the question of

---

[7] The Defendants do attempt to place this new information in the context of the pretrial proceedings in this matter. The Defendants argue that this new information, following the silence of Plaintiff's counsel during the pretrial conference while discussions of a possible agreement or *quid pro quo* between Hack and Mirlis were discussed by the Defendants and the Court, should give the Court sufficient unease to move the analysis to Rule 60(b)(6) and to at least convene a hearing to investigate. But the Defendants do not cite any authority that Plaintiff or his counsel would have been required to disclose any agreement when the subject matter arose, assuming there was such an agreement. And as discussed below, the Defendants had the tools, means, and opportunity to investigate the possibility at that time, or anytime thereafter, but did not do so.

8

the extent to which that benefit implicated Hack's credibility. Indeed, at the May 2, 2017 pretrial conference—which was conducted the day before Hack completed his deposition—the parties engaged in a long discussion about how the possibility of such an agreement and its implications for Hack's credibility might be presented to the jury. And even though the May 3, 2017 continuation of Hack's deposition was convened for limited purposes, the Defendants did not seek to expand the scope of the inquiry to address the issue. Then, at the May 9, 2017 pretrial conference, by which time all efforts to serve Hack had failed, the Defendants indicated to the Court that they might call Attorney Errante, Hack's counsel, as a witness on the issue. Presumably, Attorney Errante would have testified consistent with the affidavit before the Court now, many years later, and he would have been subject to additional inquiry as well. But the Defendants did not proceed in this fashion, nor did they file an earlier post judgment motion seeking to explore the possibility of having Attorney Errante testify.

The Court is also mindful that the Defendants were in possession of the unreturned state court complaint—in which Hack was named as a defendant by Mirlis in connection with the sexual assault allegations and a document that the Defendants had argued supported an inference of a *quid pro quo*—even prior to the federal litigation. Nevertheless, the Defendants did not ask Hack about any such agreement (or even why he might have been dropped from the state court complaint) during the earlier portions of his deposition.[8] The Defendants later made the affirmative decision not to offer the never-returned state court complaint into evidence.[9] Further, the Court

---

[8] The Defendants represent that they were unaware of the alleged cooperation agreement during the first two days of Hack's deposition, in 2016. But the Defendants also admitted that at Hack's deposition "[l]ines of questioning were held back in anticipation of having this live witness at trial." (May 9, 2017 Tr. 12:9–11, ECF No. 400-2.) The Court cannot conclude that those withheld questions would have revealed any agreement with Mirlis, though neither can the Court rule out the possibility. And as regrettable as the Defendants' decision to forgo some lines of questioning may be in retrospect, such regret does not, in equity, counsel a new trial or proceeding as the Defendants request.

[9] When faced with the possibility that a member of the defense team may be called by the Plaintiff to rebut the suggestion that the state court complaint evidenced a *quid pro quo*, the Defendants abandoned their intention to offer the complaint for that purpose. (May 2, 2017 Tr. 49:13–51:18, ECF No. 400-1.)

9

observes that Hack and Errante were not the only witnesses available to address the question of an agreement between Plaintiff and Hack: The Plaintiff himself may have had such knowledge. And at oral argument the Defendants conceded that Plaintiff was never questioned about such an agreement or another *quid pro quo* between himself and Hack. Indeed, Plaintiff was not asked why Hack was not named in the federal complaint during his trial testimony.

After the conclusion of the trial, a judgment was rendered on June 6, 2017 in the amount of $21,749,041.10. At no time between the date of judgment and 2021 (when the Errante affidavit surfaced) did the Defendants explore this issue further by, for example, asking Attorney Errante about the contours of any potential agreement or *quid pro quo* between Hack and the Plaintiff.[10] Defense counsel specifically acknowledged that Errante was one source of this information during the May 9, 2017 pretrial conference and was even then contemplating calling him as a witness. The Defendants offer no reasonable explanation for this extraordinary delay of over four years from the date of judgment to the bringing of this motion—a motion which seeks to explore an issue about which everyone was aware at the time of trial. Given the absence of effort on the part of the Defendants to investigate this matter until now, the interests in finality and prejudice to the non-moving party would outweigh the Defendants' interest in exploring the matter further even if the Court considered this motion pursuant to Rule 60(b)(6). *See Rodriguez v. Mitchell*, 252 F.3d 191, 201 (2d Cir. 2001) (finding a delay of three and a half years not to be a reasonable). *See also Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 190 n.8 (2d Cir. 2006) (noting that extraordinary circumstances "typically do not exist where the applicant fails to move for relief promptly").

**Conclusion**

---

[10] In fact, they still have not made that inquiry and instead rely upon an affidavit submitted in a different forum.

Ultimately, the Defendants seek to present a record that gives this Court sufficient unease about the events that transpired such that the Court at least convenes an evidentiary hearing to explore whether there was an undisclosed (and potentially nefarious) agreement between the Plaintiff and Hack by which the Defendants were denied a full and fair trial and through which the integrity of the judicial process was compromised. The hearing, the Defendants posit, will allow the Court to determine whether there are equitable bases upon which to grant the Defendants relief from the judgment. However, whether considered under Rule 60(b)(2) or Rule 60(b)(6), the motion is untimely: The Defendants had the time and opportunity to explore this issue, and their failure to do so in a timely fashion bars them from the relief that they seek.

For the reasons set forth above, the Defendants' motion for relief from final judge judgment and/or for an evidentiary hearing concerning the same is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of March 2022.

 /s/ Kari A. Dooley  
KARI A. DOOLEY  
UNITED STATES DISTRICT JUDGE